**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Penington Painting Company LLC, | No. CV-25-02964-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Cherry Painting Company Incorporated, et al., | |
| Defendants. | |

Plaintiff Penington Painting Company LLC ("Penington") has filed a motion to disqualify the law firm representing three non-party subpoena recipients. (Doc. 40.)  For the reasons that follow, the motion is denied.

## RELEVANT BACKGROUND

Penington is a competitor of Cherry Painting Company, Inc. and Cherry Painting Company, LLC (together, "Cherry") in the commercial painting industry.  In this action, Penington alleges, among other things, that Cherry induced one of Penington's employees (who now works for Cherry) to misappropriate Penington's trade secrets and confidential information.  (Doc. 20 at 3.)

During the discovery process, Penington served subpoenas on non-parties Trilantic Capital Management, LLC ("Trilantic"), Brookfield Capital Partners, LLC ("Brookfield"), and Aurum Capital Connect, LLC ("Aurum") (together, "the Third Parties").  Trilantic and Brookfield "invested significant funds in Cherry," while Aurum was previously retained by Cherry in an effort to "expand [Cherry's] business" and, as part of that effort, previously

"contacted [Penington] on [Cherry's] behalf to discuss a partnership or joint venture." (Doc. 40 at 5.) The subpoenas seek "documents and information relating to [Cherry's] business expansion plans, forecasts, projections, and investor materials, all of which relate to [Penington's] contention that [Cherry's] business plan includes expanding to new markets and competing through unlawful means." (*Id.*)

Cherry is represented in this action by attorneys from the law firm Bradley Arant Boult Cummings LLP ("Bradley"). (Doc. 26.) Each Third Party also retained Bradley to respond to the subpoena and responded by raising an array of objections and not producing any documents. (Doc. 41-3 at 2-4 [Trilantic response letter]; *id.* at 5-7 [Aurum response letter]; *id.* at 8-10 [Brookfield response letter].) Each response letter appears to be identical. (*Id.*)

## DISCUSSION

I.      The Parties' Arguments

Penington moves to disqualify Bradley from representing the Third Parties in relation to the subpoenas. (Doc. 40.) Penington argues that disqualification is warranted for two independent reasons: *first*, Bradley's representation of the Third Parties violates Ethical Rule ("ER") 1.7 because "Bradley's representation of [Cherry] is directly adverse to the Third Parties" or because "Bradley's concurrent representation of [Cherry] and the Third Parties is, at minimum, materially limited" due to a significant risk that Bradley's independent judgment in relation to each client will be impaired; and *second*, Bradley's conduct in objecting on behalf of the Third Parties and refusing to produce documents "is improper" under Rule 45 of the Federal Rules of Civil Procedure,[1] which "does not permit a party to the litigation to advise a third party to object or ignore a subpoena," and under ER 3.4(a) and (f). (*Id.* at 6-8.)

The Third Parties argue in response that Penington does not have standing to seek Bradley's disqualification on conflict-of-interest grounds and, at any rate, there is no

---

[1]      Although the motion refers to "Fed.R.Evid. 45," there is no such rule, and the Court assumes this was meant to be a reference to Rule 45 of the Federal Rules of Civil Procedure.

conflict of interest between Cherry and the Third Parties.  (Doc. 41 at 3-7.)  The Third Parties further argue that they had the right to retain Bradley as their counsel of choice, such that ER 3.4(f) is inapplicable, and that the objections they lodged are "expressly permitted" under Rule 45.  (*Id.* at 7-8.) The Third Parties further argue that Penington's "contrived accusations of ethical impropriety and frivolous [arguments] warrant sanctions."  (*Id.* at 8.)[2]

In reply, Penington reiterates its disqualification arguments and purports to identify "smoking-gun evidence" establishing the existence of a conflict of interest between Cherry and the Third Parties.  (Doc. 42 at 4.)[3]

II.      Legal Standard

"Anyone appearing before the court is bound by" the District of Arizona's local rules, LRCiv 83.3(c)(1), which in turn provide that "[t]he 'Rules of Professional Conduct,' in the Rules of the Supreme Court of the State of Arizona, shall apply to attorneys" practicing in the District of Arizona.  LRCiv 83.2(e).  As a result, the Arizona Rules of Professional Conduct are applicable here.  *Christensen v. U.S. Dist. Ct. for Cent. Dist. of California*, 844 F.2d 694, 697 n.6 (9th Cir. 1988) ("Because the Central District of California has expressly adopted the California ethical rules, we must decide whether the district court properly applied the California rules."); *Unified Sewerage Agency v. Jelco Inc.*, 646 F.2d 1339, 1342 n.1 (9th Cir. 1981) ("[T]he United States District Court for the District of Oregon has adopted as its rules the disciplinary rules of the State Bar of Oregon. Therefore, in deciding whether the district court properly denied Jelco's motion to disqualify the plaintiff's law firm, we must decide whether the district court properly applied the Code of Professional Responsibility adopted by the State Bar of Oregon.") (citation omitted).

---

[2]      The Third Parties' request for oral argument is denied because the issues are fully briefed and argument would not aid the decisional process.  *See* LRCiv 7.2(f).

[3]      After Penington filed its reply, the Third Parties filed a request for leave to file a sur-reply.  (Doc. 43.)  That request is denied as moot in light of the Court's determination, discussed below, that Penington's disqualification request should be denied on the existing record.

- 3 -

Arizona decisional law construing Arizona's Rules of Professional Conduct may also be applicable here. In a case arising from the Central District of California—which, as noted, has expressly adopted, by local rule, California's ethical rules—the Ninth Circuit held that "we apply state law in determining matters of disqualification" and "must follow the reasoned view of the state supreme court when it has spoken on the issue." *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). In another case arising from the Central District of California, the Ninth Circuit further held that "[i]f the state supreme court has not spoken on the issue, we look to intermediate appellate courts for guidance, although we are not bound by them if we believe that the state supreme court would decide otherwise." *Radcliffe v. Hernandez*, 818 F.3d 537, 543 (9th Cir. 2016). Because the District of Arizona has, like the Central District of California, expressly adopted the underlying state's ethical rules, district courts in the District of Arizona routinely follow Arizona decisional law when resolving disqualification requests. *See, e.g., Roosevelt Irr. Dist. v. Salt River Project Agr. Imp. & Power Dist.*, 810 F. Supp. 2d 929, 944 (D. Ariz. 2011); *Sandoval v. Corizon, L.L.C.*, 2017 WL 2687626, *4 (D. Ariz. 2017); *D. Stadtler Tr. 2015 Tr. v. Gorrie*, 2023 WL 355887, *3-4 (D. Ariz. 2023); *Takeover Indus. Inc. v. Holley*, 2025 WL 1191771, *7 (D. Ariz. 2025).[4]

In Arizona, motions to disqualify are "view[ed] with suspicion." *Gomez v. Superior*

[4]   The Court acknowledges that whereas the District of Arizona has only adopted the Arizona Rules of Professional Conduct, *see* LRCiv 83.2(e), the Central District of California has adopted both "the Rules of Professional Conduct of the State Bar of California, *and* the decisions of any court applicable thereto." C.D. Cal. L.R. 83-3.1.2 (emphasis added). Given this distinction, it is unclear whether *County of Los Angeles*'s holding regarding the binding nature of state-court decisional law on matters of disqualification also applies here. *Compare Shawarma Stackz LLC v. Jwad*, 2021 WL 5830625, *2 (S.D. Cal. 2021) ("In this circuit, district courts that have adopted by local rule the state's ethical code governing lawyers must follow the reasoned view of the state supreme court when it has spoken on the issue.") (cleaned up) *with Crago v. Pitz*, 627 F. Supp. 3d 1066, 1071 (D. Ariz. 2022) ("[E]ven accepting the District of Arizona's local rule incorporates the text of Rule 4.2, it would not be appropriate to defer blindly to state court interpretation regarding the reach of Rule 4.2."). *See generally Cord v. Smith*, 338 F.2d 516, 524 (9th Cir. 1964) (holding that state-court decisional law bearing on attorney ethics did not "control[]" in a disqualification proceeding and that "federal courts [need not] permit, in proceedings before those courts, whatever action by an attorney-at-law [that] may be sanctioned by the courts of the state"). It is unnecessary to resolve that issue in this case because the outcome would be the same regardless of whether Arizona decisional law interpreting the Arizona Rules of Professional Conduct were deemed binding.

*Court*, 717 P.2d 902, 905 (Ariz. 1986). "Only in extreme circumstances should a party to a lawsuit be allowed to interfere with the attorney-client relationship of his opponent." *Alexander v. Superior Court*, 685 P.2d 1309, 1313 (Ariz. 1984). "[T]he moving party . . . [must] show sufficient reason why an attorney should be disqualified from representing his client. Whenever possible the courts should endeavor to reach a solution that is least burdensome upon the client or clients." *Id.* The Preamble to the Arizona Rules of Professional Conduct cautions that "violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation." Ariz. Sup. Ct. R. 42, Ariz. R. Pro. Conduct Preamble ¶ 20. *See also id.* ("[T]he purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons."). "[D]isqualification motions should be subjected to 'particularly strict scrutiny' because of their potential for abuse." *Roosevelt Irr. Dist.*, 810 F. Supp. 2d at 944 (citation omitted). "In determining whether disqualification is required, courts have examined various factors, including (1) the nature of the ethical violation, (2) the prejudice to the parties, including the extent of actual or potential delay in the proceedings, (3) the effectiveness of counsel in light of the violations, and (4) the public's perception of the profession." *Rsch. Corp. Techs. v. Hewlett-Packard Co.*, 936 F. Supp. 697, 703 (D. Ariz. 1996). The Court "consider[s] the facts and circumstances of each case, including the particulars of the ethical violation itself, in determining whether the harsh sanction of disqualification is warranted." *Id.*

III.    Analysis

A.    **ER 1.7(a)**

Penington first seeks disqualification under ER 1.7(a), which provides in relevant part that "[a] concurrent conflict of interest exists if: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

In the Ninth Circuit, the "general rule" is that "courts do not disqualify an attorney on the grounds of conflict of interest unless [a former or current client] moves for disqualification." *Kasza v. Browner*, 133 F.3d 1159, 1171 (9th Cir. 1988). *See also Blacktail Mountain Ranch Co., LLC v. Jonas*, 611 F. App'x 430 (9th Cir. 2015) ("Plaintiffs lacked standing to move for disqualification because they were not clients or former clients of Defendants' counsel"); *De Dios v. Int'l Realty & Invs.*, 641 F.3d 1071, 1077 (9th Cir. 2011) (district court's finding that plaintiff "lacked standing to seek disqualification for defense counsel's alleged breach of duties to *his* client" was "well grounded and legally correct"). Likewise, under Arizona law, "[g]enerally, only a client or a former client has standing to challenge legal representation on grounds of conflict of interest." *State ex rel. Romley v. Superior Court*, 891 P.2d 246, 248 (Ariz. Ct. App. 1995). There are "exception[s] to the general rule," but they arise "only in extreme circumstances." *Id.* (cleaned up).

The Ninth Circuit and Arizona courts have both cited, with approval, the Fifth Circuit's decision in *In re Yarn Processing Pat. Validity Litig.*, 530 F.2d 83 (5th Cir. 1976). *Kasza*, 133 F.3d at 1171; *Romley*, 891 P.2d at 248. There, the Fifth Circuit emphasized that consent of present and former clients "will prevent the disqualification of the attorney" on conflict-of-interest grounds. *Yarn Processing*, 530 F.2d at 89. The Ninth Circuit has cited *Yarn Processing* in support of the proposition that a client "may expressly or impliedly waive his objection and consent to the adverse representation," adding that "[i]t is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from asserting it promptly is deemed to have waived that right." *Tr. Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983). For these reasons, and because this case does not present an extreme circumstance, Plaintiff lacks standing to seek disqualification of the Third Parties' counsel on conflict-of-interest grounds. *Accord CWT Canada II Ltd. P'ship v. Bridges*, 2017 WL 3534977, *3 (D. Ariz. 2017) ("Assuming without deciding that [there is] a conflict of interest under Ethical Rule 1.7, Plaintiffs do not have standing

to bring a motion to disqualify WB on this basis."); *Xcentric Ventures, LLC v. Stanley*, 2007 WL 2177323, *2 (D. Ariz. 2007) ("Defendants . . . lack standing to move for the disqualification of Plaintiffs' counsel on the ground of conflict of interest."); *Wakefield v. Advanced Med. Servs. Corp.*, 2010 WL 11628521, *5 (D. Ariz. 2010) ("The Court also concludes that Defendants do not have standing to move for disqualification of Mr. Britt based upon an alleged conflict of interest.").

Alternatively, even if Penington had standing, Penington's arguments regarding ER 1.7 would fail on the merits. *Cf. Kasza*, 133 F.3d at 1171 ("Regardless, even assuming that Frost does have standing, we see no basis for disqualification."). Penington asserts that "Bradley's representation of [Cherry] is directly adverse to the Third Parties" because "[b]y refusing to produce documents on behalf of the Third Parties, [Bradley] is actively shielding [Cherry] from discovery while simultaneously advising subpoenaed non-parties to withhold information they are obligated to produce," such that Bradley "cannot advocate a position for [Cherry] without undermining the Third Parties' legal obligations in this matter." (Doc. 40 at 6.) As an initial matter, this argument rests on the false premise that the Third Parties lack the right to object to the subpoenas. More broadly, it is simply untrue that Cherry's and the Third Parties' interests are "directly adverse" in this context. Examples of "directly adverse" representations include when "a lawyer . . . act[s] as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated," when a lawyer "cross-examine[s] a client who appears as a witness in a lawsuit involving another client," and when "a lawyer is asked to represent a seller in negotiations with a buyer represented by the lawyer." ER 1.7, cmts. 6-7. In contrast, "simultaneous representation in unrelated matters of clients whose interests are only economically adverse, such as representation of competing economic enterprises in unrelated litigation, does not ordinarily constitute a conflict of interest." *Id.*, cmt. 6. Here, far from being directly adverse or even economically adverse, the interests of Cherry and the Third Parties in this litigation appear to be aligned. As the Third Parties persuasively explain in their response brief, "the common interest among Cherry and the

[Third Parties] is readily apparent.  Trilantic . . . and Brookfield . . . are both owners of [Cherry].  Aurum . . . helped facilitate the acquisition of their ownership interest.  Their common interest in [Cherry's] successful operation, expansion, and dismissal of this lawsuit is clear."  (Doc. 41 at 6-7.)

Meanwhile, although a conflict of interest also "exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests," *see* ER 1.7, cmt. 8, Penington has not established that such a significant risk exists here.  Penington contends the challenged representation arrangement is so obviously improper that no existing Arizona precedent addresses it,[5] but Penington overlooks that courts outside Arizona and the Ninth Circuit have consistently declined to order disqualification under analogous circumstances.  For example, in *Closure Sys, Int'l Inc. v. Novembal USA Inc.*, 2020 WL 4726735 (S.D. Ind. 2020), a law firm concurrently represented the defendant and a non-party subpoena recipient.  *Id.* at *3.  The plaintiff moved to disqualify the law firm, arguing that the concurrent representation arrangement violated Indiana Rule of Professional Conduct 1.7, but the court concluded that "the potential conflict pointed to by [the plaintiff] clearly is not 'sufficiently grave' as to call into question the fair or efficient administration of justice such that [the plaintiff] has standing to pursue its motion to disqualify [the law firm]."  *Id.*  Similarly, in *ChemFree Corp. v. J. Walter, Inc.*, 2008 WL 5234252 (N.D. Ga. 2008), a law firm concurrently represented the defendants and certain non-party witnesses.  *Id.* at *1.  The plaintiff filed a motion asking the court "to conduct an investigation into possible attorney misconduct," arguing that the concurrent representation arrangement violated Georgia Rule of

_____

5    Doc. 40 at 7 n.1 ("[T]he reason for the absence of case law is simple.  In complex commercial litigation cases, involving third party discovery, Arizona attorneys do not simultaneously represent the parties to the litigation and third parties that have been served with subpoenas in litigation."); Doc. 42 at 2 ["[T]he absence of directly on-point cases reflects the obvious: Arizona attorneys do not undertake the untenable position of simultaneously representing parties to litigation while also representing non-parties who have been served with subpoenas in that same matter.  This is a basic ethical boundary that reasonable practitioners understand not to cross, and as a result, courts have had little occasion to address it."].

Professional Conduct 1.7, but the court denied the motion on the ground that "[i]t is not facially improper to simultaneously represent a party in a case and also to represent a non-adversarial, fact witness in that case." *Id.* at \*1-2. In reaching this conclusion, the court acknowledged that the representation arrangement could be viewed as a "strategic" tactic intended "to lawfully obstruct some limited discovery" but concluded that, "[w]ithout more, the fact of the representation of the witness and the party does not violate the rule." *Id.* at \*2. And again, in *Guillen v. City of Chicago*, 956 F. Supp. 1416 (N.D. Ill. 1997), where a law firm concurrently represented the defendant and certain non-party witnesses, the plaintiffs moved to disqualify the law firm from representing the non-party witnesses, arguing that the concurrent representation arrangement violated both Rule 1.7 of the Rules of Professional Conduct for the Northern District of Illinois and an ABA model disciplinary rule whose "closest analogue . . . is Rule 1.7," but the court denied the disqualification request because the plaintiffs had "not demonstrated that an impermissible conflict of interest has emerged (or almost certainly will emerge) in concrete form." *Id.* at 1422-23. In reaching this conclusion, the court acknowledged that conflicts "*could* arise" but emphasized that informed consent by the client, rather than "immediate disqualification," was the appropriate remedy. *Id.* at 1426-27.

Nor is disqualification warranted based on Penington's contention that the Third Parties' objections are substantively baseless and designed to advance Cherry's litigation position. (Doc. 40 at 9 ["When [Bradley] represents both [Cherry] and the Third Parties, the Third Parties' obligations to respond to [Penington's] subpoenas completely and candidly become effectively subordinated to [Cherry's] litigation strategy. Courts have a paramount interest in preventing manipulation of this kind to deter future misconduct, preserve confidence in judicial outcomes, and send a clear message that ethical rules cannot be circumvented to gain a tactical advantage."].) In *Guillen*, the parties seeking disqualification similarly argued that "the alleged conflict between the paramedics and the defendants will force City counsel to instruct the paramedics to . . . frustrate the discovery process by refusing to answer legitimate questions," but the district court held it possessed

an array of tools for addressing discovery abuses that are more surgical than the blunt instrument of a disqualification order. *Guillen*, 956 F. Supp. at 1423-24 ("[R]emedies less drastic than disqualification are available to solve any problems that might arise during the discovery process. The court may, for example, call upon City counsel to explain why it has objected to some or all of the plaintiff's questions.  The court could also impose appropriate sanctions against City counsel for vexatious delay.") (citing *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 658 F.2d 1355 (9th Cir. 1981)).  Here, too, to the extent Penington believes the Third Parties' objections are substantively baseless, it can seek targeted relief through the usual discovery-dispute channels.

B.    **ER 3.4 And Rule 45**

Penington's remaining basis for seeking disqualification is that Bradley's conduct in objecting on behalf of the Third Parties and refusing to produce documents "is improper" under Rule 45 and ER 3.4(a) and (f).  (Doc. 40 at 6-8.)

ER 3.4(f) provides that a lawyer shall not, absent exceptions that are inapplicable here, "request a person other than a client to refrain from voluntarily giving relevant information to another party."  This provision is inapplicable because the Third Parties are Bradley's clients.  Thus, Bradley is not asking "a person other than a client" to do anything when it acts as counsel for the Third Parties in relation to the subpoenas.

ER 3.4(a) provides that a lawyer shall not "unlawfully obstruct another party's access to evidence," "unlawfully alter, destroy or conceal a document or other material having potential evidentiary value," or "counsel or assist another person to do any such act."  This subdivision comes into play only when an attorney acts "unlawfully," and there is no indication in Penington's motion that Bradley had acted unlawfully.  Indeed, serving a written objection is a course of action specifically permitted by Rule 45 to protect a subpoena recipient.  Fed. R. Civ. P. 45(d)(1)(B).

Although Penington identifies various cases in which a court determined that advising a third party not to respond to a subpoena was improper (Doc. 40 at 8), those cases

are distinguishable because, as the Third Parties note, "no attorney-client relationship existed between those counsel and the non-parties" (Doc. 41 at 7). For example, in *Price v. Trans Union, L.L.C.*, 847 F. Supp. 2d 788 (E.D. Pa. 2012), after the defendant issued subpoenas to third parties, the plaintiff's attorney "wrote letters to those third parties . . . [advising] the third parties not to respond." *Id.* at 791. Although the court stated that "[n]owhere in [Rule 45] is it contemplated that the adversary of the party seeking the information may advise, no matter the reasons, the person commanded by the subpoena to produce the information to ignore the subpoena's command," this statement was made in the context of sending "Advice Letters" to non-clients, not providing legal advice to a client. *Id.* at 794. At any rate, Rule 45 allows a subpoena recipient to object to the subpoena. Next, in *Fox Indus., Inc. v. Gurovich*, 2006 WL 2882580 (E.D.N.Y. 2006), an attorney who was not retained to represent subpoenaed third parties sent them letters which "did not . . . merely 'ask' the recipients not to respond; [they] also announced, in bold print, that due to alleged service flaws, 'the subpoena is null and void as a matter of law and should not be complied with.'" *Id.* at *2 (emphasis omitted). By sending an unsolicited letter directing subpoenaed third parties not to respond, the attorney "usurped the authority of the court." *Id.* at *8. This is a far cry from the current situation. And in *Handloser v. HCL Am., Inc.*, 2020 WL 6460986 (N.D. Cal. 2020), defense counsel implicitly threatened to sue a subpoenaed third party if it responded to the plaintiff's subpoena. *Id.* at *4-5. Again, that is not the situation here. In contrast, in cases (such as this one) where the lawyer accused of the Rule 3.4 violation was retained by the third party, courts have declined to find a violation. *Adkisson v. Jacobs Eng'g Grp., Inc.*, 2016 WL 6534273, *5-6 (E.D. Tenn. 2016); *ChemFree Corp.*, 2008 WL 5234252 at *4-5.

One loose end to be addressed is Penington's argument, raised for the first time in its reply brief, that there is "smoking-gun evidence" in the form of "communications responsive to the subpoenas" that "[Penington] possesses" and that the Third Parties' subpoena response "falsely claimed do not exist." (Doc. 42 at 2-4.) More specifically, Penington notes that although Aurum asserted in its response letter that it had no

"responsive, non-privileged documents in its custody, possession, or control" in relation to Request No. 6—which sought "all internal Documents and Communications relating to [Penington]"— Penington independently possesses at least one such document: an August 13, 2025 email from an Aurum representative to a Penington representative asking whether Penington would be interested in "Cherry taking a minority position in your company." (*Id.*)  Penington argues that "[t]his communication (and the internal communications that lead-up to this communication) are clearly responsive to the subpoena [Penington] served. Yet, [Bradley], serving as both [Cherry's] counsel and Aurum's counsel, indicated in response to [Penington's] subpoena that this communication (and communications like this communication) did not exist.  It begs the question, what other documents exist and why [is Cherry] so interested in preventing them from disclosure." (*Id.* at 4.)

Nothing about this argument changes the disqualification calculus.  As an initial matter, Penington does not explain why it waited to raise this argument until its reply brief—presumably, it already had the August 13, 2025 email in its possession at the time it filed its disqualification motion on March 17, 2026.  *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").  Nor does Penington clearly explain why the August 13, 2025 email—which is an *external* communication from Aurum to Penington—would be responsive to the Request No. 6, which, as noted, only sought "*internal* Documents and Communications relating to [Penington]."  At any rate, to the extent Penington believes that Aurum's response to the subpoena is, for whatever reason, insufficient, Penington may seek relief by following the usual process of meeting and conferring and then, if necessary, seeking targeted judicial relief.  There is no basis for proceeding directly to disqualification. *Burch & Cracchiolo, P.A. v. Myers*, 351 P.3d 376, 386 (Ariz. Ct. App. 2015) ("[B]ecause disqualification motions are disfavored, the trial court should always consider alternative solutions that will adequately address the purported harm.") (cleaned up).

Finally, the Third Parties' request to recover the fees they incurred in responding to Penington's disqualification request (Doc. 41 at 8-9) is denied.  The sole authority cited by

the Third Parties in support of this request, Rule 37(a)(5)(B), authorizes the imposition of fees upon the denial of motion for an order compelling disclosure or discovery, yet that is not the sort of relief Penington seeks.

Accordingly,

**IT IS ORDERED** that:

1. Penington's motion to disqualify (Doc. 40) is **denied**.

2. The Third Parties' motion for leave to file a sur-reply (Doc. 43) is **denied as moot**.

Dated this 27th day of April, 2026.

Dominic W. Lanza
United States District Judge