**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Penington Painting Company LLC, | No. CV-25-02964-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Cherry Painting Company Incorporated, et al., | |
| Defendants. | |

The Court has reviewed the parties' joint motion for discovery dispute resolution (Doc. 48) and concludes that oral argument is unnecessary.

As background, Plaintiff Penington Painting Company LLC ("Penington") is a competitor of Defendants Cherry Painting Company, Inc. and Cherry Painting Company, LLC (together, "Cherry") in the commercial painting industry. In this action, Penington alleges, among other things, that Cherry induced Defendant Clint Badger ("Badger")—a then-Penington employee who now works for Cherry—to misappropriate Penington's trade secrets and confidential information. (Doc. 20 at 3.) The complaint alleges that Penington became aware of Badger's alleged misconduct after it "had Badger's Penington computer forensically analyzed." (Doc. 1 ¶ 7.) The name of the third-party company that Penington hired to perform the forensic examination is "Executech." (Doc. 48 at 8.) According to the complaint,

> This review showed that Badger had deleted almost his entire email inbox in the weeks prior to leaving. Among the emails that Badger deleted and Penington was able to retrieve were communications where: (1) Badger

changed the contact information for Penington on multiple client online databases, which resulted in requests for bids being sent to Badger directly and Penington not receiving them at all; (2) in the months prior to his departure, Badger falsely informed multiple potential customers that Penington did not have the bandwidth to complete their work and, as a result, these potential customers should call Rocky Cherry; and (3) Badger spent over thousands of dollars courting a key customer just prior to leaving Penington and that customer became a Cherry Coating customer. Additionally, Penington learned that just days before he left his employment, Badger requested that IT load a screen sharing program onto his computer. Finally, Penington also discovered that the week before Badger left, Badger remotely logged into the Penington server from home late at night. While remotely logged in, Badger accessed multiple job files for jobs he was not working on. These included job files related to cleanrooms and data centers, which included Penington's proprietary and confidential information that Penington relies on to do this work.

(Doc. 1 ¶ 7.) Other paragraphs of the complaint contain additional allegations regarding the "third-party . . . forensic exam of Badger's computer." (*See, e.g., id.* ¶¶ 58-65.)

During the discovery process, Badger[1] propounded an array of discovery requests to Penington for documents and other information regarding the forensic examination. (Doc. 48 at 1-4.) In response, Penington "produced (1) a copy of the forensic images of the hard drive containing the data that Executech imaged and reviewed as part of its analysis[;] (2) bates stamped documents of the actual documents contained on the hard drive; and (3) Badger's full Outlook file. [Penington] has further offered Badger the opportunity to physically copy and inspect the hard drives." (*Id.* at 8.) The pending discovery dispute concerns whether Penington should be required to go further and produce the report that Executech previously drafted to summarize its forensic analysis of those materials.

Penington opposes disclosure. (*Id.* at 8-10.) First, Penington states that it may retain Executech to serve as a testifying expert in this case. (*Id.* at 8.) In that scenario, Penington argues that Executech will produce a final report by the expert disclosure deadline of

---

[1] Penington has also sued Badger's spouse, Britni Badger, and she joined in the discovery requests at issue. For ease of reference, both individual Defendants will be collectively referred to as "Badger."

October 31, 2026, that will set forth the basis for Executech's "analysis and conclusions regarding the contents of Badger's computer"; that Badger will then have an opportunity to depose Executech; and that any earlier reports written by Executech will be immune from disclosure under Rule 26(b)(4)(B) because they will constitute the draft reports of a testifying expert. (*Id.*) Second, and alternatively, Penington argues that "to the extent [it] does not retain Executech as its designated expert on this issue, then Executech is a non-testifying expert and Badger is not entitled to discovery from Executech" under Rule 26(b)(4)(D). (*Id.*) Penington acknowledges there is a potential exception under Rule 26(b)(4)(D) upon a showing of "exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means" but contends that exception is inapplicable here because it has already produced all of the raw data that Executech analyzed and Badger is free to retain his own forensic expert to analyze that data. (*Id.* at 8-9.)

Badger disagrees, arguing that because "Penington made the litigation choice to focus on the Analysis and to cite to it repeatedly in the Complaint," Penington waived any right to oppose disclosure of documents and information related to Executech's forensic analysis based on the attorney-client privilege, work-product protection, and/or Rule 26(b)(4)(D). (*Id.* at 5.) Badger continues: "Penington may not use the Analysis as a sword—claiming it shows that Mr. Badger allegedly misappropriated Penington's trade secrets—and as a shield—by withholding the underlying information showing the scope, conduct, and reasonableness of the Analysis." (*Id.* at 6.)

Penington has the better of this dispute. To the extent Penington's plan is to rely on Executech as a testifying expert regarding the forensic analysis of Badger's computer, Executech will be required to draft, and Penington will be required to disclose, a final report by the expert disclosure deadline of October 31, 2026. (Doc. 47.) In that scenario, Badger would not be entitled to discover the initial version of the report that Executech drafted and provided to Penington regarding the forensic analysis. *See* Fed. R. Civ. P. 26(b)(4)(B) ("Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule

26(a)(2), regardless of the form in which the draft is recorded."); 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, § 26:88 (June 2026 update) ("In 2010, Federal Rule of Civil Procedure 26(b)(4)(B) was amended to provide work-product protection to drafts of expert reports required under Rule 26(a)(2)(B) and drafts of summary disclosures required under Rule 26(a)(2)(C). The new rule altered the result followed in most courts that allowed discovery of draft reports. The work-product protection applies 'regardless of the form in which the draft is recorded.' This phrase was included to ensure that the protection was not limited to hard copy final drafts but included all versions of the draft as they were recorded during the drafting process, including all electronic versions stored as the report was prepared, dictated versions, and so on.") (footnotes omitted).[2] Nor would denying access to that preliminary report implicate the sort of "sword/shield" considerations that Badger seeks to invoke—in this scenario, Badger will receive, well in advance of trial, a final report that provides a full explanation of the basis for Executech's opinions regarding the forensic analysis and will also be provided an opportunity to depose Executech regarding those opinions and to retain its own expert, if necessary, to counter those opinions.

Meanwhile, if Penington decides not to utilize Executech as a testifying expert, Executech's preliminary report regarding the forensic analysis will likely be immune from disclosure under Rule 26(b)(4)(D), which provides that "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." *See also In re*

---

[2] To be clear, "an expert's working notes are not 'drafts' protected by Rule 26(b)(4)(B). Whether any particular writing is protected on the grounds that it was a part of the drafting process will depend on the circumstances." 1 Gensler, *supra*, § 26:88 (footnoted omitted). *See generally Cnty. of Maricopa v. Off. Depot Inc.*, 2019 WL 5066808, *25 (D. Ariz. 2019). Here, however, Badger does not contend the disputed material is subject to disclosure because it qualifies as "working notes" rather than a draft report. Instead, Badger's position is simply that the material at issue—which Penington consistently characterizes as a "draft report" (Doc. 48 at 8)—is subject to disclosure because Penington has placed it at issue in this litigation and thus forfeited any protections that might otherwise apply.

*Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563, 584 n.31 (S.D. Tex. 2005) ("Most discovery against non-testifying experts is prohibited by Federal Rule of Civil Procedure 26(b)(4)(B).").[3] "The purpose of Rule 26(b)(4)(B) is to create a safe harbor whereby facts and opinions of non-testifying, consulting experts are shielded from discovery, except upon a showing of exceptional circumstances," and "the party seeking production has the heavy burden of proving exceptional circumstances." *Animal Legal Def. Fund v. Olympic Game Farm, Inc.*, 335 F.R.D. 404, 405 (N.D. Cal. 2020) (cleaned up). Badger has not met that burden here—he has been provided with, or otherwise given access to, all of the underlying data that Executech analyzed. *Compare* 1 Gensler, *supra*, § 26:93 ("This [exceptional circumstances] provision might be satisfied if, for example, the expert had a special opportunity to observe a condition that is no longer observable.").

For these reasons, Badger has not established that he is entitled, at least at this time,[4] to production of the materials at issue in the joint motion for discovery dispute resolution.

Accordingly,

**IT IS ORDERED** that the parties' joint motion for discovery dispute resolution (Doc. 48), which the Court construes as a motion to compel filed by Badger, is **denied**.

Dated this 24th day of June, 2026.

_____
Dominic W. Lanza
United States District Judge

---

[3]  Penington persuasively asserts (Doc. 48 at 8), and Badger does not appear to dispute, that Penington retained Executech to perform the forensic analysis in anticipation of litigation.

[4]  The Court provides this caveat because "[s]ome courts may also find exceptional circumstances when the testifying expert collaborated with the consulting expert or when the work of the consulting expert was used as the basis for the testifying expert's opinion." 1 Gensler, *supra*, § 26:93. Thus, if Penington ends up not utilizing Executech as a testifying expert, chooses instead to retain a different expert to provide opinions regarding the forensic analysis of Badger's computer, and that new expert consults with Executech or otherwise relies on Executech's work for the purpose of forming those opinions, those developments may require reconsideration of the discoverability of Executech's draft report.