**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Penington Painting Company LLC,<br>Plaintiff,<br>v.<br>Cherry Painting Company Incorporated, et al.,<br>Defendants. | No. CV-25-02964-PHX-DWL<br>**ORDER** |

Pending before the Court is a motion to compel subpoena responses from non-parties (Doc. 54) filed by Plaintiff Penington Painting Company LLC ("Penington"). For the reasons that follow, the motion is denied.

**RELEVANT BACKGROUND**

Penington is a competitor of Cherry Painting Company, Inc. and Cherry Painting Company, LLC (together, "Cherry") in the commercial painting industry. In this action, Penington alleges, among other things, that Cherry induced one of Penington's employees (who now works for Cherry) to misappropriate Penington's trade secrets and confidential information and then used that misappropriated information to expand into Arizona, where Cherry had no presence before 2021. (*See generally* Doc. 54 at 2-4.)

In early 2026, Penington served subpoenas on non-parties Trilantic Capital Management, LLC ("Trilantic"), Brookfield Capital Partners, LLC ("Brookfield"), and Aurum Capital Connect, LLC ("Aurum") (together, "the Third Parties"). (Doc. 54-1 at 2, 11, 20.) According to Penington, the Third Parties are connected to this litigation because

"Trilantic and Brookfield are private equity firms that have invested significant funds in Cherry" and "Aurum is a headhunting company that [Cherry] retained to expand its business." (Doc. 54 at 4.) The subpoenas are broad in scope—among other things, they seek "[a]ny and all Documents and Communications" between each recipient and Cherry over "the last five years" and "[a]ny and all Documents and Communications between You and Cherry relating to Cherry's business strategies, including: cost, profit, and revenue structures; pricing models; expansion and/or acquisition plans; workforce planning, recruitment, or employment strategies; standards of procedure; marketing or sales strategies; investment or financing plans; prospectuses; and the types of services or products offered, developed, or contemplated." (*Id.* at 4-5.) Penington contends these materials are relevant because "documents and information relating to [Cherry's] business expansion plans, forecasts, projections, and investor materials, all . . . relate to Penington's contention that [Cherry's] business plan includes expanding to new markets and competing through unlawful means." (*Id.* at 5.)

In February 2026, each Third Party responded to the subpoena by sending a letter to Penington raising various objections. (Doc. 54-2 at 2, 5, 8.) Among other things, each letter raised the objection that "Penington must first seek relevant documents, to the extent any such documents exist, from the parties to the action before burdening a non-party with the cost of responding." (*Id.* at 3, 6, 9.) Each objection letter was written by Andrew Graben of the law firm Bradley Arant Boult Cummings LLP. (*Id.* at 4, 7, 10.) At the time, Mr. Graben and his law firm were also counsel of record for Cherry in this action. (Docs. 24, 25.)

On March 27, 2026, Penington moved to disqualify Mr. Graben and his law firm from simultaneously representing Cherry and the Third Parties. (Doc. 40.)

On April 27, 2026, after the motion to disqualify became fully briefed (Docs. 41, 42), the Court denied it. (Doc. 45.)

On June 3, 2026, Penington sent a letter to the Third Parties addressing their February 2026 objection letters. (Doc. 54-3.) Notably, this letter did not specifically

address the Third Parties' objection that Penington should first seek the requested materials from Cherry—instead, Penington responded only to the Third Parties' separate objections regarding the 100-mile radius rule, overbreadth and undue burden, irrelevance, privilege, and the non-existence of responsive documents. (*Id.*)

On June 16, 2026, counsel for Penington and the Third Parties met and conferred regarding the subpoenas. They present different accounts of what occurred during the meet-and-confer session—Penington contends that "the Third Parties finally agreed to produce documents related to [Cherry's] expansion plans and financial reports" only to later renege on that agreement (Doc. 54 at 6-7), while the Third Parties contend that "[f]ollowing the conferral, [they] anticipated updated requests from Penington more narrowly tailored to fit the actual facts of their relation to this case," but "[i]nstead, without any further follow up or discussion, Penington filed its Motion to Compel." (Doc. 58 at 2-3.)

On August 13, 2026, Penington filed the pending motion to compel. (Doc. 54.) The motion is now fully briefed (Docs. 58, 60) and neither side requested oral argument.

**DISCUSSION**

Although the Third Parties oppose enforcement of the subpoenas on a variety of grounds, the Court will limit the analysis to one of those grounds because it is dispositive. As noted, one of the objections the Third Parties raised in their February 2026 objection letters was that, because they are non-parties, Penington should first be required to attempt to obtain the requested materials from Cherry. (Doc. 54-2 at 3, 6, 9.)[1] In its motion, Penington expressly "concedes this obligation." (Doc. 54 at 10.) However, Penington contends that "in the time between first serving the Subpoenas on the Third Parties and the latest conference with counsel for the Third Parties, Penington has repeatedly requested that [Cherry] produce the documents sought in the Subpoenas. Yet, [Cherry] has refused to produce a single document responsive to the Subpoenas." (*Id.*) Penington thus contends it has "fulfilled its obligation to seek the requested documents from a party to the litigation

[1] As further noted, Penington did not address this objection in its June 2026 response letter. (Doc. 54-3.)

and now turns to the Third Parties only after [Cherry] has failed to produce the requested materials. Therefore, the Court should overrule the Third Parties' objections based on Penington first seeking the documents from other parties to this litigation." (*Id.*)

In response, the Third Parties contend that Penington has not, in fact, "sought the requested documents from [Cherry] in any appropriate capacity. Penington claims it has 'requested' that [Cherry] produce documents responsive to the Subpoenas. However, the Subpoenas are not directed to [Cherry] and cannot be 'transferred' to it. Penington has not served Rule 33 discovery requests seeking the documents covered by the Subpoenas. Nor, if Penington feels it has sufficiently requested the documents, has it sought to compel responses from [Cherry]." (Doc. 58 at 5.) The Third Parties specifically flag "an omnibus discovery dispute hearing on August 17, 2026" between the parties, noting that "[t]o the [Third Parties'] knowledge, at no point during that hearing or in the discovery dispute briefing did Penington seek to compel [Cherry's] production of the documents requested in the Subpoenas." (*Id.*) Later, the Third Parties add: "The only effort that Penington has made to seek relevant documents from [Cherry] is to mention them in meet and confer discussions. Penington has not issued any requests for production [to Cherry] that seek the documents requested in the Subpoenas. Penington has the ability to do so, and both [Cherry] and the [Third Parties] have suggested that Penington do so. For reasons unknown to the [Third Parties], Penington has refused to issue that discovery. Until Penington has done so and [Cherry] refuses to produce documents (which the [Third Parties] understand is not currently [Cherry's] position), Penington cannot impose that burden on the [Third Parties]." (*Id.* at 7-8.)

In reply, Penington does not factually dispute any of the Third Parties' arguments on this issue. (Doc. 60.) Instead, Penington faults the Third Parties for "attempt[ing] to transform the special consideration afforded nonparties under Rule 45 into a categorical exhaustion requirement" and argues that to the extent the Third Parties believe "Penington cannot obtain discovery from them unless it first serves identical requests on [Cherry] and litigates those requests to conclusion," "[n]either Rule 45 nor the Ninth Circuit authority

cited by the [Third Parties] establishes such a rule." (*Id.* at 2.) Penington also argues for the first time that "the Subpoenas seek categories of information that are not necessarily obtainable from [Cherry] at all, including the [Third Parties'] internal investment analyses, diligence materials, and internal communications concerning Penington. . . . [T]he possibility that some responsive information may also exist in a party's possession does not establish disproportionality where the information available from the party is not necessarily 'identical to the information' sought from the nonparty." (*Id.* at 6.)

On this record, Penington's request to compel compliance is denied. In its motion, Penington expressly "concede[d]" that it had an "obligation" to first seek the documents at issue from Cherry before attempting to obtain them from the Third Parties. (Doc. 54 at 10.) However, after the Third Parties noted in their response brief that Penington had not, in fact, properly sought the documents at issue from Cherry (Doc. 58 at 5), Penington proceeded, in its reply brief, to pretend it had not made a concession on this issue in its motion and to articulate new arguments as to why it shouldn't be required to seek the documents at issue from Cherry. (Doc. 60 at 6–7). This is not the way litigation is supposed to work. *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief."). *Cf. Momox-Caselis v. Donohue*, 987 F.3d 835, 842 (9th Cir. 2021) ("In this court, the Momox-Caselis family argues that Law is not entitled to discretionary act immunity because gathering information and preparing a recommendation were ministerial tasks and did not involve policy considerations. This argument is inconsistent with their prior concession in district court. We, therefore, hold that this argument has been waived . . . ."); *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) ("Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position. This court invokes judicial estoppel not only to prevent a party from gaining an advantage by taking inconsistent positions, but also because of general considerations of the orderly administration of justice and regard for the dignity of judicial proceedings, and to protect

against a litigant playing fast and loose with the courts.") (cleaned up).

At any rate, Penington's arguments also fail on the merits. "[N]on-parties are entitled to special consideration when it comes to subpoena requests under Rule 45" and, "[a]s part of this inquiry, the Court may evaluate whether information requested through a non-party subpoena is readily available from a party." *Mi Familia Vota v. Hobbs*, 343 F.R.D. 71, 81-82 (D. Ariz. 2022). Here, it appears that at least a significant portion of the documents at issue could be obtained directly from Cherry, yet Penington has not served Cherry with requests for production seeking those documents and has somewhat conspicuously failed to provide an explanation for its failure to do so. Nor does it appear that Penington has made any effort to narrow the scope of the subpoenas to cover only the subset of materials that are uniquely in the possession, custody, or control of the Third Parties or to meet and confer with the Third Parties regarding the possibility of such narrowing—as noted, Penington's June 3, 2026 response letter ignored the Third Parties' objections on this topic, and the parties have provided scant details regarding the substance of their June 16, 2026 meet-and-confer session.

It also appears to the Court that any hypothetical responsive documents in the possession, custody, or control of only the Third Parties but not Cherry (such as the Third Parties' "internal investment analyses, diligence materials, and internal communications concerning Penington," *see* Doc. 60 at 6) would have, at most, only fleeting relevance to the disputed issues in this action. As noted, Penington hopes to obtain proof of Cherry's alleged plan to conquer the Arizona market through tortious means. (Doc. 54 at 2-4.) But even assuming such proof exists, it is much more likely to be documented in Cherry's communications *with* the Third Parties—which, as noted, Penington could seek to obtain directly from Cherry—than in the Third Parties' *internal* communications and documents. Penington's efforts to seek those internal communications thus resembles the proverbial fishing expedition, *see, e.g.*, *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in fishing expeditions.") (cleaned up), and non-party subpoena recipients are particularly entitled to protection in

this circumstance. *Mi Familia Vota*, 343 F.R.D. at 81 ("[W]e do not expect nonparties to shoulder the same types of discovery burdens as the parties and are therefore quicker to find that the burden or expense in question is undue and offer protection as needed to alleviate it.") (cleaned up).[2]

The final matter to address is the Third Parties' request for an award of attorneys' fees and costs pursuant to Rule 45(d)(1) should Penington's motion be denied. (Doc. 58 at 10.) In response, Penington argues that "sanctions under that provision are not warranted merely because a subpoena is challenged, narrowed, or ultimately found unenforceable in part." (Doc. 60 at 9.)

Rule 45(d)(1) provides that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." The Ninth Circuit has explained that "Rule 45(d)(1) is discretionary. . . . Merely losing a motion to compel does not expose a party to Rule 45 sanctions. Similarly, while failure to narrowly tailor a subpoena may be a ground for sanctions, the district court need not impose sanctions every time it finds a subpoena overbroad; such overbreadth may sometimes result from normal advocacy, which we have said should not give rise to sanctions. A court may, however, impose sanctions when a party issues a subpoena in bad faith, for an improper purpose, or in a manner inconsistent with existing law." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1185 (9th Cir. 2013) (citations omitted). "[B]ad faith is a sufficient ground for sanction, but it is not a necessary ground if Rule [45(d)(1)] is otherwise violated in good faith." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 428 (9th Cir. 2012). Ultimately, the analysis should "place[] more emphasis on the recipient's burden than on the issuer's

---

[2] The Court acknowledges that the Third Parties have provided few details to substantiate their claims of burdensomeness. As Penington notes in its reply (Doc. 60 at 10-11), this sort of omission sometimes provides a reason for overruling a subpoena recipient's undue-burden objection. Even so, on this record, it is clear to the Court that compelling compliance would create an undue burden.

motives." *Id.* at 428-29.

Applying these standards, the Court concludes the Third Parties' request for costs and fees should be granted. Penington did not take reasonable steps to reduce the burden on the Third Parties where the subpoenas were overbroad on their face (e.g., the first request for "[a]ny and all . . . Communications" between each recipient and Cherry over a five-year period), Penington's June 2026 response letter did not address the Third Parties' objection regarding Penington's ability to obtain responsive documents from Cherry, and Penington initially "concede[d]" in its motion to compel that it had an "obligation" to do so, only to change course in its reply and make new arguments inconsistent with that concession.

Accordingly,

**IT IS ORDERED** that:

1. Penington's motion to compel (Doc. 54) is **denied**.

2. Penington and the Third Parties shall meet and confer concerning the Third Parties' entitlement to recover their fees and costs under Rule 45(d)(1). If Penington and the Third Parties cannot come to an agreement regarding the size of the award, the Third Parties shall file a motion (and supporting evidence) within 14 days of the issuance of this order. Penington's response shall be filed within 14 days of the motion. No reply may be filed.

Dated this 1st day of October, 2026.

Dominic W. Lanza
United States District Judge